IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 08-cv-00532-LTB-KLM

EAGLE AIR MED CORPORATION; and
SCENIC AVIATION, INC.,

      Plaintiffs,

v.

COLORADO BOARD OF HEALTH;
COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT;
JAMES B. MARTIN, Executive Director of Colorado Department of Public Health and Environment, in his official capacity;
HEALTH FACILITIES AND EMERGENCY MEDICAL SERVICES DIVISION of the Colorado Department of Public Health and Environment;
EMERGENCY MEDICAL AND TRAUMA SERVICES SECTION of the Colorado Department of Public Health and Environment;
HOWARD ROITMAN, Director of the Health Facilities and Emergency Medical Services Division of the Colorado Department of Public Health and Environment, in his official capacity; and
D. RANDALKUYKENDALL,Chief of the Emergency Medical and Trauma Services Section of the Colorado Department of Public Health and Environment in his official capacity,

      Defendants.

___

MEMORANDUM OPINION AND ORDER
___

Babcock, J.

      This action for declaratory and injunctive relief is before me on Defendants' Motion to Stay Pursuant to the *Younger* Abstention Doctrine [Doc # 14]. Oral argument would not materially assist in determination of the motion. After consideration of the motion, related pleadings, and the case file, I grant the motion as set forth below.

## I. Background

Plaintiffs' Complaint asserts that Plaintiff Eagle Air Med Corporation ("Eagle Air") is an air ambulance agency licensed in the State of Colorado with a base in Alamosa, Colorado and that Plaintiff Scenic Aviation, Inc. ("Scenic") provides the air transport capability that Eagle Air uses to operate its emergency medical air ambulance business. Plaintiffs seek a declaratory judgment that C.R.S. § 25-3.5-307, which governs the licensure of air ambulances, and the regulations that have been promulgated thereunder have been preempted by the Federal Aviation Act of 1958 (the "FAA Act"), codified as amended at 49 U.S.C. §40101, *et seq.*, which Plaintiffs assert renders aviation safety subject to federal regulation only, and by 49 U.S.C. § 41713(b)(1), a provision of the Airline Deregulation Act of 1978 (the "ADA") which prohibits states from enacting or enforcing laws or regulations that relate to the prices, routes, or services of FAA certified air carriers. In particular, Plaintiffs challenge the statutory and regulatory requirements that entities seeking to provide air ambulance services in Colorado must acquire and maintain accreditation by the commission on accreditation of medical transport systems ("CAMTS"), whose standards they claim primarily address aviation safety issues.

Eagle Air is currently accredited by CAMTS. However, an accreditation and investigation procedure was commenced following a crash that resulted in air ambulance fatalities while Eagle Air was operating within Colorado. In an 8-page letter dated November 30, 2007, CAMTS advised Eagle Air that it was withdrawing its accreditation pending appeal and set forth seventeen findings that were purportedly not in compliance with CAMTS standards. Eagle Air notified the Colorado Department of Public Health and Environment (the "CDPHE") of the potential withdrawal of its accreditation, and the CDPHE commenced an

investigation of the matter. Eagle Air also appealed the withdrawal decision, and CAMTS has deferred a final decision pending further inspection or investigation and a hearing. Plaintiffs seek to enjoin the state's regulatory proceedings.

By the Motion, Defendants argue that this case should be stayed pending the resolution of ongoing state proceedings involving Eagle Air pursuant to the *Younger* abstention doctrine. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971).

## II. Analysis

Under the *Younger* abstention doctrine, a federal court must refrain from exercising jurisdiction "when the federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1291 (10th Cir. 1999). In *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans ("NOPSI"),* 491 U.S. 350, 367 (1989), the Supreme Court suggested that abstention under *Younger* might not be appropriate in cases involving claims of federal preemption that are "facially conclusive." Since *NOPSI*, cases from other circuits have recognized a "facially conclusive" preemption exception to *Younger*. *See e.g. Local Union No. 12004, United Steelworkers of Amer. v. Massachusetts,* 377 F.3d 64 (1st Cir. 2004); *GTE Mobilnet of Ohio v. Johnson,* 111 F.3d 469 (6th Cir. 1997). But, this exception has been construed to be narrow in scope. *See Hughes v. Att'y. Gen.of Fla.,* 377 F.3d 1258, 1265 (11th Cir. 2004) ("[O]nly the clearest of federal preemption claims would require a federal court to hear a preemption claim when there are underlying state court proceedings and when that claim can be raised in the state forum").

Although the Tenth Circuit has not yet addressed the issue, Plaintiffs argue that the

3

"facially conclusive" preemption exception to *Younger* is applicable in this case and that Defendant's motion should therefore be denied without consideration of the *Younger* requirements. In support of this argument, Plaintiffs focus on 49 U.S.C. § 41713(b)(1) despite the fact that their Complaint places equal if not greater emphasis on the FAA Act's purported preemption of the field of aviation safety. Section 41713(b)(1) provides that a political subdivision of a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...." Plaintiffs argue if Eagle loses its CAMTS accreditation and its air ambulance license pursuant to C.R.S. § 25-3.5-307 and the regulations that have been promulgated thereunder, then Scenic, an FAA certified on-demand air carrier, will be deprived of its right to deliver air carrier services in Colorado in violation of 49 U.S.C. § 41713(b)(1).

In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992), the Supreme Court broadly interpreted the prohibition of state enforcement of any law "relating to rates, routes, or services" of any air carrier under 49 U.S.C. § 1305(a)(1), the predecessor statute to 49 U.S.C. §41713(b)(1), and concluded that state actions "having a connection with, or reference to [air carrier] 'rates, routes, or services' are pre-empted...." *Id.* at 384. Although this broad interpretation seemingly weighs in favor of a finding that the ADA is "facially conclusive" on the question whether the law and regulations at issue in this case have been preempted, the Supreme Court further recognized that some state laws may affect the prices, routes, or services of an air carrier "'in too tenuous, remote, or peripheral a manner' to have preemptive effect." *Id.* at 390 (*quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21 (1983)). Concluding that the question whether the ADA preempted the states from prohibiting allegedly deceptive airline

fare advertisements through enforcement of their general consumer protection statutes was not "a borderline question," the Supreme Court found it unnecessary to address "where it would be appropriate to draw the line." *Id.* The Supreme Court also indicated that only those state laws having a ***"significant effect"*** or a ***"significant impact"*** on the prices, routes, or services, of an air carrier were preempted under the ADA. *Id.* at 388, 390 (emphasis added). Finally, the Supreme Court emphasized that its decision did not give the airlines carte blanche to lie and deceive consumers since the Department of Transportation expressly retained the power to prohibit advertisements which did not further competitive pricing. *Id.* at 390-1.

As a result of the limitations and qualifications the Supreme Court recognized regarding the scope of 49 U.S.C. § 41713(b)(1) in *Morales*, the preemptive effect of 49 U.S.C. §41713(b)(1) is not as broad or as obvious as its language might otherwise suggest. While Plaintiffs cite other authority in support of a finding that the "facially conclusive" preemption exception to *Younger* is applicable in this case, this authority recognizes the same limitations and qualifications and is predicated on vastly different fact patterns.

First, in *Rowe v. New Hampshire Motor Transp. Ass'n,* – U.S. – , 128 S. Ct. 989 (2008), the Supreme Court considered whether 49 U.S.C. §14501(c)(1), a federal statute analogous to 49 U.S.C. §41713(b)(1) but addressing motor carriers rather than air carriers, preempted two provisions of Maine's tobacco law, which regulated the delivery of tobacco to customers within the state. In holding that the federal law preempted the state law, the Supreme Court relied largely on its prior decision in *Morales* and reiterated that state laws affecting the prices, routes, or services of a motor carrier or an air carrier in a tenuous, remote, or peripheral manner or that had less than a significant impact in these areas are not preempted by federal law. *Id.* at 995 &

5

997. So, while *Rowe* generally supports a broad interpretation of the preemptive scope of 49 U.S.C. § 41713(b)(1), it also supports the conclusion that Plaintiffs cannot meet the high standard that the Tenth Circuit would likely utilize if it were to recognize the "facially conclusive" preemption exception to *Younger* based on exceptions to the premeptive scope of this statutory provision. In any event, it is far from clear that the state laws at issue in *Rowe* are analogous to those at issue in this case.

In *Amer. Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995), the Supreme Court held that the predecessor statute to 49 U.S.C. §41713(b)(1) preempted the plaintiffs challenge to retroactive changes in the defendant's frequent flyer program pursuant to Illinois's Consumer Fraud Act. Once again, the Supreme Court recognized the limitations to the otherwise broad scope of this section of the ADA that were set forth in *Morales* but concluded that they did not preclude preemption under the particular circumstances before it.

Finally, in *Arapahoe County Pub. Airport Author. v. FAA,* 242 F.3d 1213 (10th Cir. 2001), the Tenth Circuit held that the petitioner airport authority's ban on an air carrier's passenger service from an airport was preempted by 49 U.S.C. § 41713(b)(1). In reaching this conclusion, the Tenth Circuit noted the ADA's objectives "to enhance 'the availability of a variety of adequate, economic, efficient, and low-priced services' ... and to 'encourag[e] entry into air transportation markets by new and existing air carriers and the continued strengthening of small air carriers to ensure a more effective and competitive airline industry.'" *Id.* at 1222 (*quoting* 49 U.S.C. § 40101(13)). There remains at least a question whether the subject Colorado statute and regulations, which specifically relate only to emergency medical air transport, frustrate these objectives or any other objective of the ADA. This certainly must be

taken into account in determining whether it is "facially conclusive" that Colorado's statute and regulations are preempted by 49 U.S.C. § 41713(b)(1).  *See Rowe*, 128 S. Ct. at 995 ("... pre-emption occurs at least where state laws have a 'significant impact' related to Congress' de-regulatory and pre-emption-related objectives").

At this juncture I am not persuaded that the ADA's preclusion of state regulation of carrier "price, route, or service" conclusively equates to state regulation of ***emergency medical air transportation service*** which exists in some form in a majority of states*.*  This is not the "clearest" federal preemption claim that would preclude application of the *Younger* abstention doctrine to this case.  *See Hughes*, 377 F.3d at 1265.

 Nothing in the preceding analysis is meant to suggest that Plaintiffs' claim of preemption pursuant to 49 U.S.C. § 41713(b)(1) is without merit.  But for now I am concerned solely with whether such preemption is "facially conclusive."  Since the Tenth Circuit has not recognized this exception to abstention under *Younger*, I err on the side of caution and employ the high standard for this exception that Plaintiffs are unable to meet in light of the unique circumstances of this case - the regulation of emergency medical air transport services to protect the public health - and the recognized limitations on the preemptive effect of 49 U.S.C. § 41713(b)(1).  Plaintiffs do not even argue that it is "facially conclusive" that the Colorado statute and regulations at issue are preempted by the FAA Act, implicitly conceding that this exception is inapplicable to these claims as well.

Having concluded that the "facially conclusive" preemption exception is inapplicable here, I turn my attention to the *Younger* requirements for abstention.  As previously stated, a federal court must refrain from exercising jurisdiction under *Younger*  "when the federal

7

proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims." *J.B. ex rel. Hart,* 186 F.3d at 1291. "Younger abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Amanatullah v. Colorado Bd. of Med. Examiners,* 187 F.3d 1160, 1163 (10th Cir. 1999).

Plaintiffs' argument that the *Younger* requirements for abstention are not met in this case focuses only on the first and second requirements. First, Plaintiffs argue that the mere existence of an investigation by the CDPHE into CAMTS's intent to withdraw Eagle Air's accreditation does not constitute an ongoing state proceeding under the first *Younger* requirement. Both Plaintiffs and Defendants argue that the Tenth Circuit case of *Amanatullah v. Colorado Bd. of Med. Examiners,* 187 F.3d 1160, 1163 (10th Cir. 1999) is dispositive of this issue but disagree in their analysis of that case. Careful review of *Amanatullah* is therefore necessary.

In *Amanatullah*, the defendant licensing agency (the "Board") began an investigation into allegations against the plaintiff physician in December of 1995. *Id.* at 1162. On March 13, 1996, the Board issued the first of two "30-day" letters to plaintiff requesting information regarding the allegations against him. *Id.* Several months later, the Board referred the case to the Attorney General for commencement of formal disciplinary proceedings to revoke plaintiff's medical license. *Id.* The plaintiff physician then commenced an action in federal district court seeking to enjoin the Board from commencing formal disciplinary proceedings against him. *Id.* The federal district court dismissed the complaint based on its conclusion that it must abstain under *Younger*. *Id.* On appeal, the plaintiff argued that the dismissal was improper, in part, because substantial proceedings had taken place in federal court before any state proceedings.

8

*Id.* at 1162-3. The Tenth Circuit rejected this argument and held that state proceedings commenced on March 13, 1995 when the Board issued its first "30-day" letter to plaintiff and not when the Attorney General filed a formal complaint. *Id.* at 1163.

Defendants argue that as in *Amanatullah*, the state proceedings here began when the CDPHE sent written notice to Eagle Air on January 14, 2008 that it was commencing an investigation based on CAMTS's notice of its intent to withdrawal Eagle Air's accreditation. This argument is entirely consistent with the Tenth Circuit's holding in *Amanatullah*. Plaintiffs argue that since the Tenth Circuit did not find that the state proceeding commenced at the time the Board's investigation was first initiated in December of 1995, then there is no ongoing state proceeding regarding Eagle Air's air ambulance license. This argument makes little sense. Plaintiffs' other arguments regarding the first requirement under *Younger* are likewise unavailing. The simple fact of the matter is that the CDPHE currently has the authority to conduct investigations regarding air ambulance services providers' compliance with licensure requirements and has notified Eagle Air of its decision to do so. As in *Amanatullah* then, ongoing state proceedings involving the same underlying issues as this case began with written notification to Eagle Air on January 14, 2008, and the first requirement under *Younger* is therefore satisfied.

Plaintiffs next argue that the second requirement under *Younger* has not been met because any ongoing state proceedings do not implicate "an important state interest." Defendants have identified the state interest at stake as protecting the public health through promoting the quality and efficiency of emergency medical services, specifically emergency medical air transportation services. Although Plaintiffs concede that public health is generally

9

an important state interest, they argue that the state regulation of federally certified air carriers that provide air ambulance services is not a vital state interest sufficient to withstand federal preemption. But Plaintiffs put the cart before the horse and would have me decide the merits of their preemption claims in determining whether it is appropriate for me to address the substance of these claims in the first place.

The only authority that Plaintiffs cite for the proposition that analysis of the second *Younger* requirement requires consideration of whether the state laws at issue have been federally preempted is *Midwestern Gas Transmission Co. v. McCarty,* 270 F.3d 536 (7th Cir. 2001). In *Midwestern Gas,* the Seventh Circuit observed that there is no basis for invoking *Younger* if there is no valid state interest at stake "if for example [the state] is seeking to regulate activities that clearly are under exclusive federal control." *Id.* at 539. The Seventh Circuit went on to state that "[t]his is not to say that a defense of federal preemption automatically defeats *Younger*, the position rejected in [NOPSI]. ... But the state here is not asserting a state interest; it is trying to take control of the interstate market in natural gas." *Id.*

Under *Midwestern Gas* then, a particular state law will not implicate important state interests under *Younger* if it regulates in a field that is undisputedly subject exclusively to federal authority. As already discussed, it is not readily apparent that 49 U.S.C. § 41713(b)(1) precludes any state regulation of air ambulance services by federally certified air carriers. It is likewise not readily apparent that the FAA Act precludes any state regulation relating to the safety of air ambulance services. *See Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438, (10th Cir. 1993) ("Congress has not indicated a 'clear and manifest' intent to occupy the field of airplane safety ...."). Though Plaintiffs may ultimately prevail on their preemption claims, it is unnecessary for

me to delve further into the merits of these claims in the context of Defendant's motion. I conclude that this case and the issues it raises implicate important state issues so as to satisfy the second *Younger* requirement.

Since Plaintiffs do not dispute that the third *Younger* requirement that there be an adequate state forum to hear their claims through full administrative and judicial review is satisfied here, all of the *Younger* abstention factors have been met.

IT IS THEREFORE ORDERED that Defendants' Motion to Stay Pursuant to the *Younger* Abstention Doctrine [Doc # 14] is GRANTED.


Dated: July   31  , 2008 in Denver, Colorado.

                                      BY THE COURT:

                                        s/Lewis T. Babcock
                                      LEWIS T. BABCOCK, JUDGE